# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **ANDREI J. KUBLAN, ESQ.** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| v. | *   **Case No. 1:25cv841** |
| | * |
| **JUSTIN POTTER WILSON, JR.** | * |
| | * |
| **and** | * |
| | * |
| **JOHN L. BAUSERMAN, JR., ESQ.** | * |
| | * |
| **and** | * |
| | * |
| **BESRA LAWS** | * |
| | * |
| | * |
| **Defendants.** | * |
| | * |

## AMENDED COMPLAINT

COMES NOW, *pro se* Plaintiff, Andrei J. Kublan, Esquire (hereinafter "Plaintiff" or "Mr. Kublan"), and moves for judgment against Defendants, JUSTIN POTTER WILSON, JR. (hereinafter "Wilson"), JOHN L. BAUSERMAN, JR., ESQ. (hereinafter "Bauserman"), and BESRA LAWS (hereinafter "Laws") on grounds and in the amount set forth below:

### PARTIES

1.      Mr. Kublan is an upstanding and honest citizen of the Commonwealth of Virginia and a competent and ethical attorney at law admitted to practice in the Commonwealth of Virginia, who has for many years, as part of his law firm Kublan Khan PLC, practiced his profession in the Courts of the Northern Virginia and has come to enjoy an excellent professional

reputation among the members of the Virginia State Bar as well as among members of the community.

2.      Wilson is an individual who currently resides in South Carolina at 289 Berwick Drive, Hilton Head, SC 29926.

3.      Bauserman is a practicing attorney and citizen of the Commonwealth of Virginia with his office listed as P.O. Box 1403, Fairfax, Virginia.  Bauserman previously represented Wilson in Wilson's second child custody modification case in the Arlington County Circuit Court.

4.      Laws is a citizen of the Commonwealth of Virginia residing at 3203 Graham Road, Falls Church, VA 22042.

5.      The Court has personal jurisdiction over Wilson pursuant to Virginia Code Section 8.01-328.1.

BACKGROUND

6.      Mr. Kublan had previously represented Wilson's former spouse (hereinafter "Mr. Kublan's client" or "Wilson's ex-wife") against Wilson during two child custody modification actions in the Arlington County Circuit Court in connection with Wilson's and Wilson's ex-wife's minor child.   Mr. Kublan is also a sole owner of a law firm Kublan Khan PLC located at 6521 Arlington Blvd., Suite 201, Falls Church, Virginia 22042.

7.      Wilson and Mr. Kublan's client were divorced on September 30, 2016 in Virginia where both parties resided at that time.  *See* Final Order of Divorce attached hereto as **Exhibit A**.

8.      Wilson's fist custody modification case was litigated in 2019 and was necessitated by Wilson's active and unyielding alienation efforts, his verbal abuse of Wilson's

ex-wife in front of their child, and Wilson encouraging the child to run away from his mother's home.

9.      During the final trial, Wilson confessed to his inappropriate behavior.  As a result of that case, Mr. Kublan's client was granted primary physical custody and final decision-making authority with regard to legal custody.  Wilson was also ordered to pay $53,413.27 in attorney's fees.  *See* Custody Order attached hereto as **Exhibit B**.

10.      During the first custody modification trial, realizing that it was not going in his favor, Wilson approached Mr. Kublan in the courthouse restroom and threatened Mr. Kublan by telling him he was "making a big mistake."

11.      Upon information and belief, ever since that time, Wilson became obsessed with Mr. Kublan and began trolling him online as well as reaching out to other individuals he encountered on the web who had an axe to grind with Mr. Kublan.

12.      On April 18, 2020, Wilson committed physical abuse of the parties' minor child, of which Wilson subsequently confessed in court as well as to regularly hitting the child on the head.

13.      As a result of this incident, a second child custody modification action was initiated by Mr. Kublan's client in 2020.

14.      Once again, largely due to Wilson's incriminating admissions in court, on March 4, 2022, Wilson's in-person custodial visitations were replaced with reunification therapy and supervised visitations.  Wilson was also ordered to pay $50,000 in attorney's fees.  *See* Child Custody and Visitation Order attached hereto as **Exhibit C**.

15.      On December 11, 2021, during the pendency of the second child custody

modification action, Wilson posted a one-star "review" on Kublan Khan PLC's Google.com

page and an identical review on Kublan Khan PLC's Yelp.com page.  *See* Yelp.com and

Google.com reviews attached hereto as **Exhibit D**.

16.     In particular, on or about December 11, 2021, Wilson, with knowledge of Mr.

Kublan's fine reputation as an upstanding member of the community and an ethical and

competent attorney at law, did, with actual malice, compose, publish and circulate as "John P."

on Kublan Khan PLC's Yelp.com page and as "Justin Wilson" on Kublan Khan PLC's

Google.com page, which are generally available to and visible to any members of the Virginia

State Bar and the community, a "review" misleadingly titled "Ibrayeva v. Kublan", which

directed audience to search for *via* Google and read the Virginia Court of Appeals unpublished

opinion in connection with Mr. Kublan's personal divorce case and contained certain false,

scandalous, and defamatory statements concerning Plaintiff and his professional fitness, as

follows:

a.      "Kublan has adopted the approach and argumentation reflected in his own divorce

proceeding in subsequent client representations."

b.      "Potential clients risk suboptimal outcomes as his approach may result in a

negative reputation and/or poor credibility among some judges in Virginia."

*See* **Exhibit D**.

17.     The clear implication of the above-quoted statements in Paragraph 16 is that Mr.

Kublan is completely unfit to practice law, lacks necessary integrity in the discharge of his job,

and has negative reputation and poor credibility among judges which could negatively affect his

clients' cases.

18.     On December 13, 2021, Wilson added an additional comment to his earlier "reviews" titled "UPDATE 12/13/21" where he refers to Mr. Kublan's communication with Wilson's then lawyer Bauserman in connection with Wilson's "review." *See* **Exhibit D**.

19.     Although Wilson's Google.com "review" subsequently was taken down by Google, Wilson kept his Yelp.com "review" posted.

20.     On April 1, 2022, after the Arlington County Circuit Court entered the Child Custody and Visitation Order taking away custody and visitations from Wilson, Wilson, through then his attorney Bauserman, appealed this order.   Wilson's appeal was subsequently dismissed on August 14, 2023.

21.     Prior to his appeal being dismissed, Wilson with the assistance of Bauserman filed multiple motions, including a Motion for Recusal of Honorable Judith L. Wheat ("Judge Wheat"), who previously presided over Wilson custody modification cases and issued the March 4, 2022 order, and motion for mistrial.   Judge Wheat subsequently denied Wilson's motion to recuse, but, at the same time, recused herself from further proceedings in this matter "given how this case proceeded over the past year."   *See* Order dated April 19, 2024 attached hereto as **Exhibit F**.

22.     Upon information and belief, Wilson and Bauserman also filed a Virginia State Bar complaint against Mr. Aaron Book, Esquire (hereinafter "Mr. Book"), a guardian *ad litem* who was assigned to Wilson's second child custody modification case, citing professional misconduct.

23.     Upon information and belief, Wilson's and Bauserman's complaint against Mr. Book was subsequently dismissed by the Virginia State Bar as unfounded.

24.     To finalize Wilson's second child custody modification case, the Supreme Court of Virginia appointed Honorable Randy I. Bellows (hereinafter "Judge Bellows") from the Fairfax County Circuit Court.  On October 15, 2024, Judge Bellows entered a final order denying all of Wilson's motions and affirming the Custody Order of March 4, 2022.   See Memorandum Opinion and Final Order attached hereto as **Exhibit G**.

25.     On or about April 22, 2022, after the Arlington County Circuit Court issued its custody order on March 4, 2022, Wilson got in touch with Mr. Kublan's ex-wife, Assel Ibrayeva (hereinafter "Ibrayeva"), offering to provide Wilson's testimony in Ibrayeva's pending deportation case, stating: "I can relay observations of [Kublan's] irascibility in a professional context; including instances in which kublan yelled like a crazy person at my lawyer."

25.     To further his plan, Wilson provided Ibrayeva with Bauserman's contact information encouraging her to speak with him about Mr. Kublan.

26.     When Ibrayeva hired a new immigration attorney for her immigration case, Wilson also encouraged him to speak with Bauserman directly, which said attorney did on May 24, 2022.

27.     After having several communications with Ibrayeva's immigration lawyer, on June 6, 2022, Bauserman wrote to him promising to "coordinate" with Wilson to draft and provide the requested derogatory affidavit about Mr. Kublan.

28.     On or about June 7, 2022, after coordinating it with Wilson, Bauserman emailed the derogatory affidavit about Mr. Kublan to Ibrayeva's immigration lawyer.

29.     After providing his derogatory affidavit, Wilson continued to communicate with Ibrayeva trying to ascertain how her immigration hearing went and to, possibly obtain additional

negative information about Mr. Kublan.

30.    Upon information and belief, Wilson never hired Bauserman as a lawyer to represent him in connection with Wilson's efforts to provide derogatory information about Mr. Kublan to Ibrayeva.

31.    Upon information and belief, almost from the outset of the second child custody modification litigation, Wilson and Bauserman were devising and implementing ways to ruin Mr. Kublan professionally and in his business, including posting defamatory reviews on Google.com and Yelp.com.

32.    After the entry of the final custody order, in or around November 2024, Wilson contacted Laws and allegedly learned that Mr. Kublan initiated a defamation suit against her in the Fairfax County Circuit Court on November 14, 2024 (hereinafter "Kublan v. Laws lawsuit").

33.    Wilson, subsequently, demanded Laws, who was represented in Kublan v. Laws lawsuit by her son, to provide Wilson with copies of all emails and court documents related to Kublan v. Laws lawsuit during the pendency of that lawsuit.

33.    Despite knowing that Laws's "review" was defamatory, Wilson and Laws jointly decided and agreed to unreasonably protract Kublan v. Laws lawsuit in order to hurt Mr. Kublan professionally and also in his business.

34.    Throughout Kublan v. Laws lawsuit, Wilson continued to encourage Laws to proceed with her meritless position by, among other things, sending her derogatory information Wilson was able to obtained online about Mr. Kublan and telling Laws: "Show this to your son. He will explain how unserious kublan is here."

35.    In furtherance of their unlawful design, Wilson also engaged in unauthorized

practice of law by giving Laws legal advice, including in one instance telling her that "[d]emure is a sensible response" and instructing Laws as to how to prosecute her legal defense.

36.     Wilson also provided Laws with information about two lawyers that she could retain to defend herself in court.  After both of these lawyers requested a large deposit in order to take Laws's case, Laws posted a negative review about one of them.

37.     Wilson and Laws also jointly concocted a plan allowing Laws to avoid attending her deposition, which was scheduled by Mr. Kublan for January 28, 2025, by faking a medical emergency.

38.     Laws also sought Wilson's advice on how not to "incriminate [herself] if this case goes any further that it needs to be."

39.     On February 26, 2025, after Mr. Kublan's Motion for Sanctions against Laws was granted, upon information and belief, Laws and Wilson decided on a different strategy to destroy Mr. Kublan professionally and in his business by Laws settling Kublan v. Laws lawsuit and by Wilson posting another defamatory review on Kublan Khan PLC's Google page.

40.     Wilson is a man of significant means, which, upon information and belief, Wilson derives from a family trust established by his grandfather.

41.     Upon information and belief, because of Wilson's considerable wealth, Wilson was certain that if Mr. Kublan went after him for Wilson's defamatory review, Wilson would be able to hire good legal counsel to either prevail in this lawsuit or make this lawsuit prohibitively expensive for Mr. Kublan to continue.

42.     Following their malicious plan, on or about February 27, 2025, Wilson posted another one-start "review" on Kublan Khan PLC's Google.com page, which, although similar to

his prior "review," now contained some additional defamatory statements and a section titled simply as "UPDATE" misleading readers to believe that a certain action occurred after Wilson posted his "review" on February 27, 2025 necessitating an update.  *See* Google.com review attached hereto as **Exhibit E**.

43.    In particular, on or about February 27, 2025, Wilson, with knowledge of Mr. Kublan's fine reputation as an upstanding member of the community and an ethical and competent attorney at law, did, with actual malice, compose, publish and circulate as "Justin Wilson" on Kublan Khan PLC's Google.com page, which is generally available to and visible to any members of the Virginia State Bar and the community, a "review" misleadingly titled "Ibrayeva v. Kublan", which directed audience to search for *via* Google.com and read the Virginia Court of Appeals unpublished opinion in connection with Mr. Kublan's personal divorce case and contained certain false, scandalous, and defamatory statements concerning Plaintiff and his professional fitness, as follows:

a.    "Kublan has adopted the approach and argumentation reflected in his own divorce proceeding in subsequent client representations."

b.    "Potential clients risk suboptimal outcomes as his approach may result in a negative reputation and/or poor credibility among some judges in Virginia."

c.    "The act Kublan threatens, in my view, represents egregiously poor legal ethics and a willingness to abuse the court system."

d.    "An electronic search of Fairfax circuit court records indicate Kublan has initiated unsuccessful defamation suits."

e.    "This practice in my view lends further credibility an assertion echoed among

others on this page that Kublan's threats have coerced the removal of negative reviews."

  *See* **Exhibit E**.

  44. Subsequent to posting this "review" and in order to find ways to substantiate it, Bauserman obtained for Wilson a copy of the court case file from *Kublan v. Curtis* defamation lawsuit, which was settled based on Curtis agreeing to remove her defamatory online reviews and to abstain from posting any additional defamatory statements in the future. *See* Settlement Agreement attached hereto as **Exhibit I**.

  45. On or about March 3, 2025, Wilson also ordered online a "full background report" on Mr. Kublan to obtain some additional negative information about Mr. Kublan in hope of using it to destroy Mr. Kublan professionally and in his business and to substantiate Wilson's February 27, 2025 defamatory review.

  46. On March 11, 2025, after Wilson posted his defamatory review against Mr. Kublan, Laws emailed Mr. Kublan asking him to settle *Kublan v. Laws* lawsuit based on her promise to remove all defamatory online reviews and to abstain from posting any additional defamatory statements in the future. The same day, Laws signed a settlement agreement promising to remove and delete her "libelous statements," which she subsequently did. *See* Settlement Agreement attached hereto as **Exhibit H**.

  47. Upon information and belief, on May 12, 2025, Wilson contacted Wilson's ex-wife and demanded that she remove her positive review about Mr. Kublan from Google.com in exchange for Wilson agreeing to pay Wilson's and Wilson's ex-wife's child's boarding school.

## Count I

## Defamation Per Se
## (Against Wilson)

48.     Plaintiff incorporates by reference his allegations set forth in paragraphs 1 through 47.

49.     On or about February 27, 2025, Wilson published his defamatory statements about Mr. Kublan on Google.com for third parties to view and digest.

50.     Defamatory statements published by Wilson on or about February 27, 2025 are actionable, as they are capable of being proven true or false.

51.     When Wilson published his defamatory statements on or about February 27, 2025, Wilson either knew them to be false, or believing them to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which his publication was based.

52.     When Wilson published his defamatory statements on or about February 27, 2025, Wilson did so with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not. It was willfully designed by Wilson to discredit Mr. Kublan in his profession, and as such was malicious and per se slanderous and libelous. Statements such as those contained in the above-quoted material are, from their usual construction and common usage, construed as insults.

53.     Defamatory statements published by Wilson on or about February 27, 2025 are actionable per se, as they impute to Mr. Kublan unfitness to perform his professional duties as an

*Amended Complaint*
*Andrei J. Kublan, Esq. v. Justin Potter Wilson, Jr., et al.*
*Case No. 1:25cv841*
*Page 11 of 16*

attorney or want of integrity in the discharge of his duties as an attorney.

54.     Defamatory statements published by Wilson on or about February 27, 2025 prejudiced Mr. Kublan in his profession as an attorney.

55.     As a proximate result of the aforementioned false, malicious, defamatory, slanderous, libelous and insulting statements, published with actual malice by Wilson, Mr. Kublan has been caused to suffer great mortification, humiliation, shame, vilification, exposure to public infamy, scandal and disgrace, injury to his good reputation, harm in the conduct of his business affairs, and financial loss, and has been and will forever be hampered in the practice of his profession, all in that Mr. Kublan has been falsely imputed to have conducted himself in an unethical and unprofessional manner.  Much of this injury will endure permanently.

WHEREFORE, Plaintiff, Andrei J. Kublan, Esquire, demands judgment against Defendant, Justin Potter Wilson, Jr., awarding Plaintiff his compensatory damages in an amount to be proven at trial, plus interest; punitive damages in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00); preliminary and permanent injunction ordering Defendant to remove Defendant's defamatory statements and prohibiting Defendant from publishing any additional statements; Plaintiff's attorney's fees and costs expended in this action; and such other relief as the Court deems appropriate.

## Count II

### Violation of the Virginia Business Conspiracy Statute
### (Against Wilson and Bauserman)

56.     Plaintiff incorporates by reference his allegations set forth in paragraphs 1

through 55.

57.     Wilson and Bauserman combined, associated, agreed, mutually undertook or concerted together for the purpose of willfully and maliciously injuring Mr. Kublan in his reputation, trade, business and profession.

58.     Wilson purposefully and intentionally conspired with Bauserman by devising and jointly implementing ways to ruin Mr. Kublan professionally and in his business, including by posting defamatory reviews on Google.com and Yelp.com, providing derogatory affidavit to Ibrayeva, and reaching out to other people on the web to obtain derogatory information about Mr. Kublan.

59.     The conspiracy committed by Wilson and Bauserman included acts which have directly injured and continue to injure Mr. Kublan's professional reputation and his business, Kublan Khan PLC.

60.     Wilson's and Bauserman's conspiracy constitutes a willful violation of Virginia Code Section 18.2-500 and has caused serious injury to Mr. Kublan and his business, Kublan Khan PLC.

WHEREFORE, Plaintiff, Andrei J. Kublan, Esquire, demands judgment against Defendants, Justin Potter Wilson, Jr. and John Bauserman, jointly and severally, awarding Mr. Kublan his compensatory damages, including loss of profits, resulting from Justin Potter Wilson, Jr. and John Bauserman's conspiracy to injure Mr. Kublan; awarding Mr. Kublan treble damages under Viriginia Code Section 18.2-500; awarding Mr. Kublan his costs, including attorney's fees as required by Code Section 18.2-500; enjoining and restraining Wilson and Bauserman from continuing the acts described above; ordering Wilson to immediately remove his defamatory

reviews; and granting such other relief as the Court deems just and appropriate.

## Count III

### Violation of the Virginia Business Conspiracy Statute
### (Against Wilson and Laws)

61.     Plaintiff incorporates by reference his allegations set forth in paragraphs 1 through 60.

62.     Wilson and Laws combined, associated, agreed, mutually undertook or concerted together for the purpose of willfully and maliciously injuring Mr. Kublan in his reputation, trade, business and profession.

63.     Wilson purposefully and intentionally conspired with Laws by devising and jointly implementing ways to ruin Mr. Kublan professionally and in his business, including by posting and maintaining a defamatory review on Google.com, exchanging derogatory information about Mr. Kublan, and prosecuting a defense of the lawsuit for the sole purpose of needlessly protracting the litigation in order to injure Mr. Kublan and his business, Kublan Khan PLC.

64.     The conspiracy committed by Wilson and Laws included acts which have directly injured and continue to injure Mr. Kublan's professional reputation and his business, Kublan Khan PLC.

65.     Wilson's and Laws's conspiracy constitutes a willful violation of Virginia Code Section 18.2-500 and has caused serious injury to Mr. Kublan and his business, Kublan Khan PLC.

WHEREFORE, Plaintiff, Andrei J. Kublan, Esquire, demands judgment against

Defendants, Justin Potter Wilson, Jr. and Besra Laws, jointly and severally, awarding Mr. Kublan his compensatory damages, including loss of profits, resulting from Justin Potter Wilson, Jr. and Besra Laws's conspiracy to injure Mr. Kublan; awarding Mr. Kublan treble damages under Viriginia Code Section 18.2-500; awarding Mr. Kublan his costs, including attorney's fees, as required by Code Section 18.2-500; enjoining and restraining Wilson and Laws from continuing the acts described above; and granting such other relief as the Court deems just and appropriate.

**JURY DEMANDED**

A trial by jury is demanded.

Respectfully submitted,

By: /s/ Andrei J. Kublan
Andrei J. Kublan, Esq.
*Pro se Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2025, the foregoing Amended Complaint was served *via* emailed to Andrew T. Bodoh, Esquire, THOMAS H. ROBERTS & ASSOCIATES, P.C., 105 South 1st Street, Richmond, Virginia 23219; Facsimile: 804-783-2105; andrew.bodoh@robertslaw.org.

/s/ Andrei J. Kublan
Andrei J. Kublan