**VIRGINIA:**

### IN THE CIRCUIT COURT FOR ARLINGTON COUNTY

| | |
|---|---|
| **JUSTIN PORTER WILSON, JR.,**<br>**Plaintiff,** | Case No. CL16001673-03 |
| v. | |
| **ANNA VLADIMIROVNA WILSON,**<br>**Defendants.** | |

### ORDER

THIS MATTER came before the Court on April 11, 2024 for hearing on Plaintiff's Motion to Recuse. Counsel for Plaintiff and the *Guardian ad Litem* ('GAL') offered documents into evidence, and argument of counsel was heard on same. Having fully considered the pleadings filed by the parties, the evidence presented, and the argument of counsel, the Court rules as follows:

Plaintiff's Motion to Recuse on the grounds of bias and delay is denied. Plaintiff cites a January 2021 email between the Court's law clerk and the GAL, sent during the height of the COVID-19 pandemic, requesting on behalf of the Court whether options existed for supervised visitation between Plaintiff and the minor child. At that time, visitation had been halted by the Court after the Court found in June 2020 that Plaintiff admitted to physical violence against the child and admitted making verbal threats of harm to the minor child. Plaintiff's actions occurred after he learned the minor child had told a therapist he preferred to live with Defendant.

The evidence tendered on April 11, 2024 established that the GAL immediately disclosed the substance of the January 2021 email and its genesis from the Court to all counsel. In addition, the substance of the communication was addressed on the record at the end of a motions hearing on March 4, 2021 by the Court, with both parties and counsel present. The Court believed then

and now this disclosure satisfied its obligation under Virginia Judicial Canon I(J). The Court stated in that hearing its position that given the acrimonious nature of the relationship between the parents, which had further deteriorated after June 2020, the minor child's unwillingness to have any contact with Plaintiff, and Plaintiff's admitted conduct in 2020, the Court supported supervised visitation as a means for getting Plaintiff back in contact with the minor child *pendente lite*. The Court strongly encouraged both parties to consider options proposed by the GAL.

At no time during that hearing, or any of the subsequent hearings prior to trial in June 2021, or the August 2021 continuation date, did Plaintiff raise any issue regarding the Court's communication with the GAL in January 2021 or the Court's on the record statement in March 2021 regarding supervised visitation. Plaintiff raised no concern about any bias by the Court, potential or actual, in attempting to reunite Plaintiff with the minor child through supervised visitation under the auspices of the GAL prior to the Court's September 2021 ruling on the merits of the case. Likewise, although the Court provided an oral ruling in September 2021, the parties waited until March 2022 to submit an order reflecting that ruling. Again, no issue was raised during any of that time regarding potential bias by the Court against Plaintiff. After that order was entered, the Court held additional hearings which focused entirely on whether Plaintiff was in contempt of court for his failure to pay attorneys' fees as directed in the March 2022 order. The Court ultimately ruled in Plaintiff's favor on that issue.

Similarly, as to Plaintiff's allegations of undue delay, numerous days of Court time were allotted to this case during the period June 2020 through September 2021, when the Court was operating under COVID-19 Emergency Guidelines. Notwithstanding the serious allegations made by both parties, the voluminous discovery motions, including multiple third-party motions to quash discovery, the entire case was tried and decided in 16 months. This included multiple days of hearings on Defendant's initial emergency motion in 2020 and approximately a week of

trial on the parties' cross-petitions to modify custody. All matters before the Court were adjudicated and ruled upon. After the Court ruled, the parties waited over 6 months to tender an order to the Court for entry. Between entry of the order in March 2022 and August 2023, the case was on appeal to the Court of Appeals.

As the Court stated on the record in March 2021, while the issue of how to resume visitation between Plaintiff and the minor child during the height of COVID in summer 2020 was being considered by the Court, Plaintiff filed a counter-petition to modify visitation. In that petition, Plaintiff alleged that Defendant had perpetrated a fraud on the Court, fabricated evidence of a bruise on the minor child's cheek and lied to the Court about the child's injuries. Afterwards, Plaintiff proceeded with a litigation strategy that included voluminous subpoenas, including ones directed at the child's school and its staff that resulted ultimately in the child being asked not to return to the specialized private school he had been attending.

At numerous hearings, the rancor between the parties and their counsel had to be addressed by the Court. At all times, the minor child remained squarely in the middle of the parents' conflict. Throughout the pendency of this proceeding, the parties filed and docketed over fifty (50) motions. Yet, the only communication to the Court from Plaintiff after the Court suspended custody *pendente lite* and took the matter under advisement, was a letter sent on October 1, 2020. As Plaintiff's counsel well knows, under the rules of this Court, letters are not the mechanism to put matters before the Court— motions are. Between June 2020 and June 2021, the issue of visitation when raised, was raised by the Court--on the record, with both parties, their counsel, and the GAL present, including in March 2021, after the parties had been apprised of the Court's January 2021 communication with the GAL.

In its ruling of September 2021, the Court outlined its very real concerns after the first custody trial in 2019, and again in 2021, about Plaintiff's inability to control his anger and the safety of the minor child as a result. Plaintiff admitted, and the Court found, that just nine months

after the order was entered in the first trial, Plaintiff vigorously shook the minor child, hit him on the backside, threatened to break his nose, and locked him in his room for two hours, all because the minor child told a therapist he wanted to live with Defendant. At the time, the minor child was eleven (11) years old.

This Court's role, in custody modification cases, is to act in the best interests of the child. Notwithstanding Plaintiff's admitted conduct during both the 2019 trial, the 2020 emergency hearing, and the 2021 trial, this Court, along with the GAL, remained focused on ways to reunite Plaintiff with the minor child in a way that would protect the physical safety and emotional well-being of the child. The options available during the COVID-19 pandemic were extremely limited, especially as the GAL reported throughout the proceedings that the child was unwilling to have any contact at all with Plaintiff.

In the Court's March 2022 order, verbally tendered in September 2021, the Court provided Plaintiff with the option for supervised visitation with a reunification therapist and review by the Court of recommendations by that therapist regarding resumption of unsupervised visitation.[1] When the Court ruled in 2021, the child had just turned thirteen (13). He is now almost sixteen (16). Since March 2022, the Court has received no communication from any reunification therapist regarding resumption of visitation between Plaintiff and the child. Moreover, counsel for Plaintiff affirmatively stated in the hearing on this motion that Plaintiff has not had contact with the child since June 2020.

Plaintiff's appeal was dismissed in August 2023. Between that time and now Plaintiff has docketed numerous hearings relating to his Motion to Recuse. He has issued numerous third-party subpoenas to the Court's former law clerks and Clerk's office staff, which have been

---

[1] When the order was finally tendered to the Court in March 2022, the review date set by the Court had passed and no report had been made to or received by the Court regarding any visitation between father and child during that time.

heard and quashed by other judges, including ones specially assigned to the case by the Office of the Executive Secretary.

Plaintiff has been afforded every opportunity to litigate this case as he deemed appropriate. He has been given every opportunity to be heard. The Court has ruled on every issue put before it in a fair and impartial manner, always giving precedence to the best interests of the child.

However, given how this case has proceeded over the past year, it is clear that further involvement by the Honorable Judith L. Wheat is an inefficient use of judicial resources and serves no purpose but to distract from the paramount issue— the best interest of the child. Accordingly, Chief Judge Wheat recuses herself from further proceedings in this matter and directs that no further communications relating to this case be directed to her, her current or future law clerks, or any Chambers staff.

The Circuit Court Administrator will forward a copy of this order to the Office of the Executive Secretary for a judge to be appointed to this matter, and all future communications will be as that Judge directs.

IT IS SO ORDERED.

ENTERED this 19th day of April, 2024.

Honorable Judith L. Wheat, Chief Judge
Arlington County Circuit Court

Signatures of the parties waived pursuant to Rule 1:13.