**VIRGINIA:**

## IN THE CIRCUIT COURT OF ARLINGTON COUNTY

| | |
|---|---|
| JUSTIN POTTER WILSON, JR., <br>     Plaintiff, | ) <br> ) <br> ) |
| Versus | )     Case Numbers: <br> )     CL16001673-01, 03, 04 |
| ANNA VLADIMIROVNA WILSON, <br> (f/k/a Anna Nikolaeva Wilson) <br>     Defendant. | ) <br> ) <br> ) |

## MEMORANDUM OPINION AND FINAL ORDER

Before the Court are pleadings filed by the parties and the Guardian *ad litem* (hereafter "GAL") expressing their respective positions regarding the need for further litigation in the above-entitled matter. Also before the Court is *Plaintiff's Motion for Mistrial*.

### I. Summary of Rulings

For the reasons stated in this Order, the Court makes the following rulings:

1. No further litigation in the above-entitled matter is warranted or appropriate. The GAL seeks no further hearings or modifications of visitation at this time. The Defendant seeks no additional hearings or litigation. The Plaintiff does request "relief of primary physical and sole legal custody" but only "upon re-trial" <u>after</u> the Court grants *Plaintiff's Motion for Mistrial,* <u>after</u> the Court vacates *every* previous order "from [the] inception" of this case, <u>after</u> the Court "investigates" the Plaintiff's accusations and allegations of judicial misconduct by the previous presiding judge, <u>after</u> the Court reopens the record for additional subpoenas, additional discovery, additional depositions, additional evidentiary hearings, and <u>after</u> the Court rejects the key findings made by the previous presiding judge. As to the visitation arrangements while all that is underway, Plaintiff asks the Court to simply authorize "expanded and substantial unsupervised, overnight and extended" visitation, apparently without regard to the terms of the existing Custody Order.[1] What the Plaintiff proposes is litigation without end, but in the meantime expects the Court to proceed as if no Custody Order exists. This, the Court declines to do.

---

[1] Under the Custody Order, the Plaintiff is limited to supervised visitation only, which initially must involve the participation of the reunification therapist. *See* ¶5(a) of the Custody Order (March 4, 2022).

2. The parties agree that the review contemplated in ¶10 of the Custody Order should not take place *at this time*. The Court agrees with this assessment and will not convene the ¶10 review hearing.[2]

3. The next logical question is whether ¶10 should be deleted from the Custody Order entirely. This is the relief sought by the Defendant. The Court concludes that ¶10 should be deleted. Plaintiff has demonstrated by his past conduct that he has no intention to engage in the required reunification therapy, which is a prerequisite to the ¶10 review. Thus, there is no reasonable prospect for a ¶10 review taking place in the foreseeable future, let alone a ¶10 review taking place before the parties' 16-year-old child becomes an adult. Therefore, ¶10 is deleted from the Custody Order.

4. The remainder of the March 4, 2022, Custody Order will remain in effect.

5. *Plaintiff's Motion for Mistrial* is denied, for the following reasons:

    a. **The motion, if treated as a genuine "motion for mistrial," is untimely.** Whatever may be the outer limit of a motion for mistrial, filing the motion *three years* after the evidence concluded is untimely.

    b. **The motion, if treated as a "motion for reconsideration," is untimely.** To the extent that the motion asserts that Chief Judge Wheat[3] erred in her factual findings, conclusions and judgments, the motion is, in substance, a motion for reconsideration. Whether labelled a motion for mistrial or motion for reconsideration, it is still untimely. Plaintiff could have, but did not, file a timely motion for reconsideration of Chief Judge Wheat's Custody Order after it was issued on March 4, 2022. Instead, Plaintiff filed 54 pages of objections and then appealed what is now known to be an unappealable order. Not only was the appeal improvident, but it had the additional

---

[2] When the Honorable Judith L. Wheat, Chief Judge of the Arlington Circuit Court, issued the Custody Order in this case, she included ¶10 – a provision for a review of visitation after the Plaintiff had undertaken reunification therapy with his child and the designated reunification therapist, as required by ¶5(a) of the Custody Order. In the more than two years that have elapsed since entry of the Custody Order, the Plaintiff has not undertaken the required reunification therapy. Therefore, the ¶10 review has not taken place.

[3] At the time Chief Judge Wheat issued the Custody Order (March 4, 2022), she was not Chief Judge. However, Judge Wheat subsequently became Chief Judge and remains Chief Judge today. Therefore, Chief Judge Wheat is referred to throughout this Order as Chief Judge. In *Plaintiff's Motion for Mistrial*, the Plaintiff frequently refers to Chief Judge Wheat simply as "Wheat." *See* the Plaintiff's reference to Chief Judge Wheat as "Wheat" on Pages 16, 21, 22, 23, 25, 26, 29, 30, 31, 35, 36, 49, 52, 55, 57, 58, 60, 63, 64, 67, 76, and 78 of *Plaintiff's Motion for Mistrial*. Where the Court quotes from *Plaintiff's Motion for Mistrial*, or *Plaintiff's Position Statement for Further Litigation*, the Court has added Chief Judge Wheat's proper title in brackets.

      detrimental effect of depriving the trial court of substantive jurisdiction over custody and visitation for more than 17 months while the appeal was pending.

  c. **The motion seeks relief that is *ultra vires*.** The motion accuses Chief Judge Wheat of judicial misconduct and asserts that this Court has both the duty and the authority to "investigate" these allegations. The Plaintiff is wrong on both counts. Even if the Court were to find merit in the Plaintiff's allegations – a finding this Court has not made – the Court has neither the duty, nor the authority, to undertake such an investigation.

  d. **The motion challenges Chief Judge Wheat's recusal decisions, but that is a matter decided, decided again, and then decided again. A fourth decision is neither warranted nor appropriate.** The motion faults Chief Judge Wheat for recusing on "neutral" grounds and "eschewing any culpability." However, this is a matter that has already been addressed by Chief Judge Wheat. *It is a matter decided.* It does not become a matter *undecided* because Plaintiff believes a *mea culpa* is warranted. It does not become a matter *undecided* because a new judge has been designated. And it does not become a matter *undecided* by filing a motion for mistrial. Moreover, not only has the matter been decided, it has been decided *three times already.* First, recusal was denied by Chief Judge Wheat in July 2023. Second, recusal was granted by Chief Judge Wheat in April 2024, but not for the reasons sought by Plaintiff. Third, the Honorable Robert J. Smith, who was designated in May 2024 to preside over further proceedings in the case, denied *Plaintiff's Motion for Reconsideration of Ruling on Motion for Recusal.*"

## II. Background

Following this Court's designation by the Supreme Court of Virginia on June 7, 2024,[4] the Court issued an order to determine the parties' respective positions regarding "what further proceedings, hearings, orders, etc., are necessary and appropriate." *See Order Requiring Parties to File Position with Respect to Further Litigation*, dated July 12, 2024.

In its Order, the Court drew the parties' specific attention to ¶10 of the Custody Order issued by Chief Judge Wheat on March 4, 2022,[5] which read as follows:

> The Court will set this matter for review, at which time the reunification therapist, guardian ad litem, and Dr. Bennett shall report to the Court as to

---

[4] This Court was originally designated on June 5, 2024, but the designation referred to this Court as a *retired* judge. A corrected designation was issued on June 7, 2024.

[5] It is this paragraph of Chief Judge Wheat's Custody Order that led the Court of Appeals, on August 14, 2023, to dismiss the father's appeal without prejudice, finding ¶10 to render Chief Judge Wheat's Custody Order to be an interlocutory order.

whether increased visitation and unsupervised visitation with Father, including overnights, weekends, and holidays, are appropriate.

¶10 was, in turn, predicated on other paragraphs in Chief Judge Wheat's Custody Order, specifically ¶5 (authorizing the father to have supervised visitation, initially with the reunification therapist, Dr. Michele Cole) and ¶8 (requiring the father to continue his "current therapy," undertake a "specific anger management program to be approved by the guardian *ad litem*," and instructing mother to engage in family counseling with Dr. Elizabeth Bennett.)[6]

After the Court's July 12, 2024 Order, the Court received the following pleadings from counsel:

- *Plaintiff's Motion for Mistrial*, filed on or about July 16, 2024.[7]
- *Plaintiff's Position Statement for Further Proceedings*, filed on or about August 2, 2024.
- *Defendant's Position with Respect to Further Litigation*, filed on about August 2, 204.
- *Guardian Ad Litem's Position on Further Litigation*, filed on or about August 2, 2024.

After receiving these pleadings, the Court heard oral argument on September 20, 2024, and took the matter under advisement. The matter is now ripe for decision.

### III. The Parties' Respective Positions Regarding Further Litigation

A. Plaintiff's Motion for Mistrial

*Plaintiff's Motion for Mistrial* asserts that "all orders and rulings entered by the Hon. Judith L. Wheat" from the "inception" of this matter must be vacated. Plaintiff's motion asks this Court to "investigate" Chief Judge Wheat's alleged judicial misconduct, alleged judicial bias, alleged delays in ruling, and alleged factual and legal errors.

---

[6] Chief Judge Wheat initially gave her decision orally on September 29, 2021, and indicated that the review hearing would take place in January 2022. *See* Transcript of September 29, 2021, at 41-42. However, "[w]hen the [written] order was finally tendered to the Court in March 2022, the review date set by the Court had passed and no report had been made to or received by the Court regarding any visitation between father and child during that time." [Recusal] Order (April 19, 2024), at 4. The March 4, 2022 Custody Order did not set a specific date for the review hearing.

[7] This motion generated multiple additional pleadings, in which both Mother's counsel and the GAL filed motions to strike the plaintiff's motion for mistrial, and the plaintiff opposed striking his pleading. *See the following: Defendant's Motion to Strike Plaintiff's Motion for Mistrial* (filed on or about July 29, 2024), *Plaintiff's Response to Defendant's Motion to Strike Motion for Mistrial* (filed on or about July 30, 2024), *Defendant's Reply to Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Motion for Mistrial* (filed on or about July 31, 2024), Plaintiff's *Praecipe: Request for Instructions* (filed on or about July 31, 2024), and *Guardian Ad Litem's Motion to Strike Plaintiff's Motion for Mistrial* (filed on or about August 2, 2024).

4

Plaintiff's motion is 89 pages long, with 227 footnotes and more than 200 pages of attachments. It is suffused with accusations of judicial misconduct, bias and delay by Chief Judge Wheat that the Plaintiff now asks this Court to "investigate."[8] It is also filled with allegations of errors by Chief Judge Wheat – errors in findings of fact and conclusions of law that Plaintiff claims are serious and pervasive.[9] Plaintiff also challenges Chief Judge Wheat's decision to recuse – not because she recused herself (the relief Plaintiff was seeking) but because she did not base her recusal on the judicial misconduct grounds alleged by Plaintiff.[10]

Plaintiff asks this Court for the following relief:

> **WHEREFORE**, upon the premises considered, Plaintiff requests the Court investigate the allegations set forth herein and conduct a full merits hearing on this motion; grant his request for mistrial upon the grounds set forth above, for bias, misconduct and delay; vacate all orders and rulings entered by the Hon. Judith L. Wheat in this matter from inception; and grant him a new trial and such other and further relief as the nature of the case may require.

*Plaintiff's Motion for Mistrial*, at Page 88.

B. Plaintiff's Position Statement for Further Proceedings

Plaintiff's position is that the Court should "proceed to investigate and determine" the *Plaintiff's Motion for Mistrial*. Only after granting a mistrial and vacating "all orders entered by [Chief] Judge Wheat" should the Court move on to consider "which portions of the existing record should be incorporated into the new proceeding." *See Plaintiff's Position Statement for Further Proceedings*, at 1. The Court should then "reopen the evidentiary record on a limited basis" to reconsider various "tainted" discovery rulings and orders by Chief Judge Wheat. *Id.* at 3. Additional discovery, including depositions, should be authorized and the Court should receive further evidence. Upon the conclusion of that process, the Court should grant the Plaintiff primary physical and sole legal custody.

As to the one paragraph that rendered the Custody Order an interlocutory order, the Plaintiff "requests the Court to dispense with the previously contemplated review set forth in paragraph 10 of the March 4, 2022 Order."

---

[8] The accusations of judicial misconduct appear on the following pages of Plaintiff's motion: Pages 1, 2, 7, 26, 28, 29, 30, 31, 35, 36, 48, 61, 62, and 76.

[9] The claims of judicial error appear on the following pages of Plaintiff's motion: 1, 2, 11, 34, 40, 44, 51, 52, 55, and 60.

[10] *See, e.g.*, this statement from Plaintiff's motion: "Judge Wheat denies recusal on grounds of bias or delay but recused herself on other neutral grounds thereby eschewing any culpability." *Plaintiff's Motion for Mistrial*, at 23, fn. 92.

### C. Defendant's Position with Respect to Further Litigation

With respect to ¶10, the Defendant agrees with Plaintiff that the review hearing should not take place – but for entirely different reasons. Defendant states that "[f]rom the language contained in Paragraph 10 of the Custody Order, the scheduling of the review hearing was directly conditioned on Plaintiff/Father's successful engagement and attendance of the reunification therapy sessions with Dr. Cole and the child." *See Defendant's Position with Respect to Further Litigation*, at 2. Defendant then states that "based on information and belief, Plaintiff/Father has never contacted Dr. Cole to begin the Court-ordered [reunification] therapy sessions." *Id.* Given that this "condition precedent" has "never been satisfied by Plaintiff/Father, no further court hearings in connection with the Custody Order need to be scheduled at this time" and that the "Court should modify the Custody Order by removing the Paragraph 10 requirement for any future review by the Court." *Id.*

### D. GAL's Position on Further Litigation

The GAL also rejects the need for the Paragraph 10 hearing at this time: "Over two years have passed without contact between Father and son. There has been no reunification therapy. As such, there is nothing to report to the Court about visitation or the possibility of an increase in visitation pursuant to the March 2022 Order." *Guardian Ad Litem's Position on Further Litigation*, at 3.

The GAL further states that the Plaintiff has not contacted Dr. Cole to initiate the reunification therapy since the entry of the March 4, 2022 Order, *Id.*, at 2, and that "[g]iven the extended amount of time that has elapsed, coupled with the intervening contentious litigation, reunification in a controlled and therapeutic setting is even more appropriate than in October 2021 (when Dr. Cole was identified [as a reunification therapist]) or March 2022 (when the Order was entered)." *Id.*, at 3.

The GAL notes, however, that "reunification therapy requires two willing parties to have a chance at success. If Father is unwilling to participate, as he has been for the past two-plus years, that ends the inquiry. If Father *is* willing to participate, the GAL will speak with the Child to determine if he is willing to engage in therapeutic reunification and report to the Court. The Child is of an age where it is counterproductive (and practically impossible) to 'force' him by Court order to participate in reunification therapy. So, any therapy would have to be on a voluntary basis." *Id.*, at 3.

The GAL concludes: "There is an extant Order that spells out the path to reunification between Father and son. No further hearings are necessary in this case, and no further order on visitation is necessary." *Id.*

## IV. Discussion

### A. Plaintiff's Motion for Mistrial

For the reasons set out below, *Plaintiff's Motion for Mistrial* is DENIED.

6

**First,** the motion it is untimely. A motion for a mistrial "must be made at the time an objectionable element is injected into the trial of the case." *Tizon v. Commonwealth*, 60 Va. App. 1, 13 (2012) (citing Ronald J. Bacigal, Criminal Procedure § 17:26, at 545 (2011-12)). Courts have found that "it is too late to move for a mistrial after the Commonwealth and defense have rested, after the jury has retired, or at the conclusion of counsel's opening or closing statement." *Id.*

Plaintiff's counsel could have sought a mistrial during the trial proceedings that occurred in 2020 or 2021. Plaintiff's counsel could have sought a mistrial at or about the time when Chief Judge Wheat rendered her oral custody ruling in September 2021—although it likely would have been adjudged untimely. Similarly, Plaintiff's counsel could have sought a mistrial at or about the time when Chief Judge Wheat issued her written Custody Order in March 2022, although again it likely would have been adjudged untimely. Plaintiff's counsel could even have sought a mistrial after the case was returned to the trial court upon the Court of Appeal's dismissal of the Plaintiff's appeal. Instead, Plaintiff sought Chief Judge Wheat's recusal and only filed the motion for mistrial after recusal was granted and a new judge designated.

Nor can Plaintiff argue that he was unaware until recently that there had been an allegedly improper *ex parte* communication between Chief Judge Wheat's law clerk and the GAL in January 2021, which is a principal element of the instant mistrial motion. As Chief Judge Wheat stated in her recusal order: "[T]he GAL immediately disclosed the substance of the January 2021 email and its genesis from the Court to all counsel." [Recusal] Order, at 1.[11] Chief Judge Wheat also stated in her Order: "In addition, the substance of the communication was addressed on the record at the end of a motions hearing on March 4, 2021 by the Court, with both parties and counsel present." [Recusal] Order, at 1.[12]

Nor can the untimely filing of the instant motion be excused by the fact that Plaintiff's motion relies, in part, on an event that occurred in 2023, specifically Chief Judge Wheat's entry of a *nunc pro tunc* order formally appointing the GAL on February 6, 2023. Plaintiff speculates that this order must have been preceded by improper *ex parte* communications between the Court and the GAL. But even if that were true, it would not excuse the failure to file the instant motion

---

[11] This is documented in the GAL's email to the Plaintiff and Defendant on January 14, 2021 – more than three years before Plaintiff filed his mistrial motion. *See* Exh. 1A to *Plaintiff's Motion for Mistrial*. In the GAL's email to counsel, he disclosed that he received a communication from Chief Judge Wheat's law clerk "asking if I had a recommendation for any interim solution" so that supervised visitation between the Plaintiff and his child could begin, and that the GAL had responded by suggesting a program called Safe Havens as an option. *Id.*

[12] *See* Transcript of March 4, 2021 hearing, at 149-153 – again more than three years before Plaintiff filed his mistrial motion. Plaintiff argues that each of these disclosures – the GAL's email to the parties on January 14, 2021, and the March 4, 2021 colloquy between the GAL and Chief Judge Wheat in court with counsel present – were inadequate and insufficient. Even if that were true, it would not justify the Plaintiff waiting more than three years to seek a mistrial.

with respect to the alleged misconduct that occurred *before* February 2023. Nor would it excuse the failure to file the instant motion *after* the Plaintiff learned of the February 2023 Order.[13]

**Second**, as to the Plaintiff's claims that the trial court committed numerous serious factual and legal errors, drew erroneous conclusions, and made multiple misjudgments, the *Plaintiff's Motion for Mistrial* is really a motion for reconsideration.[14] Such a motion should have been – and certainly could have been – filed with the trial judge who rendered the decision.

The trial court issued its written Custody Order on March 4, 2022. Plaintiff believed it to be a final order, but that still gave Plaintiff 21 days in which to see reconsideration from the trial court. Plaintiff did not do so. It was not for lack of time or opportunity to identify the various errors which Plaintiff believed the trial court had made. During that 21-day period the Plaintiff filed 54 pages of objections to the Court's Custody Order. *See Plaintiff's Objections to Final Child Custody and Visitation Order* (filed March 24, 2022). He certainly could have filed for reconsideration as well. Instead, on April 1, 2022, Plaintiff noticed his appeal.

The Plaintiff's decision to appeal the Custody Order, rather than seek reconsideration, was consequential. It deprived the trial court of jurisdiction to modify its Custody Order for the next 17 months without being able to provide the countervailing benefit of a definitive appellate ruling – an outcome entirely attributable to Plaintiff's decision to appeal an order that proved unappealable.

There was still, however, a last opportunity to seek reconsideration from the trial court judge that rendered the Custody Order decision. On August 14, 2023, the Court of Appeals dismissed the Plaintiff's appeal. On September 5, 2023, the Court of Appeals denied rehearing *en banc*, and the case returned to the Circuit Court. Knowing now that the Custody Order was interlocutory, not final, and that the Circuit Court therefore still had jurisdiction, the Plaintiff

---

[13] Plaintiff learned of the order almost immediately upon its entry, as demonstrated by the fact that he promptly filed two motions, one seeking suspension of the order, and one seeking reconsideration of the order. *See* Plaintiff's *Motion to Suspend [Order Appointing GAL]*, and Plaintiff's *Motion for Reconsideration [of Order Appointing GAL]*, each of which were filed just ten days after Chief Judge Wheat's February 6, 2023 Order appointing the GAL.

[14] The law looks at the substance of motions, not their titles. *See, e.g., Mu'Min v. Commonwealth*, 239 Va. 433, 441 n.2 (1990) ("It is of no consequence that both Mu'Min and the Commonwealth labelled their pleadings as motions for bills of particulars. The titles are irrelevant; judged by their substance, the two pleadings are motions for discovery."); and *Glenn v. Brown*, 99 Va. 322, 326-27 (1901) (describing the "practice in Virginia, where the tendency of the courts is to disregard the mere names of things, and to consider and apply their substance when it is consistent with the ends of justice...." And "[W]e need not concern ourselves as to the precise name by which this pleading is to be called.").

could have filed a motion for reconsideration. Instead, on October 30, 2023, Plaintiff filed a motion for recusal of Chief Judge Wheat.[15]

**Third**, the Plaintiff's motion mistakenly assumes that it is within the province and jurisdiction of one Circuit Court judge to initiate and conduct an investigation of allegations of judicial misconduct made against another Circuit Court judge. Among the many allegations made by the Plaintiff, he accuses Chief Judge Wheat of violating various provisions of the Canons of Judicial Conduct, *see, e.g., Plaintiff's Motion for* Mistrial, at 7, 28, and asks this Court to "investigate the allegations." *Id.* at 89. This Court is not the Judicial Inquiry and Review Commission, nor an investigative arm of the Commission, nor is the Court invested with some plenary charter by virtue of it being designated to preside over these proceedings. In short, the authority the Plaintiff ascribes to this Court is *ultra vires*.

**Fourth**, the Plaintiff devotes much of his motion to criticizing Chief Judge Wheat's handling of the Plaintiff's two recusal motions. *See Plaintiff's Motion for Mistrial*, at 20-34, 63-72, and *passim*. The first motion, filed on May 2, 2023, was denied because the Court found "that there is no need for a hearing as there is no pending action in this Court to which Plaintiff's motion would apply." *See* Order (July 5, 2023). The second motion, filed on October 30, 2023, was granted, but not for the judicial misconduct reasons sought by Plaintiff. *See* Order (April 19, 2024).

Plaintiff makes multiple accusations against Chief Judge Wheat associated with her recusal: He argues that Chief Judge Wheat intentionally delayed a resolution of the Plaintiff's recusal motion, alleging that there was "a willingness of the Wheat court to ostensibly employ its authority to slow or halt judgment on alleged impropriety that it knew, as the primary transgressive party, with certainty occurred." *Plaintiff's Motion for Mistrial*, at 64. He argues that Chief Judge Wheat "initiated proscribed communications, that she repeated her impropriety, that she issued the preponderance of her rulings with unequivocal knowledge of her improper action," *Id.*, at 76, that her conduct was "biased," *Id.* at 64, and "egregious," *Id.*, at 76. Plaintiff is particularly critical of what he asserts is "the Court's failure to acknowledge plain acts of impropriety," *Id.*, at 78, the Court's "refusal to forthrightly acknowledge the nature and scope of

---

[15] As to Plaintiff's argument that a judge ought not decide a matter while a recusal petition is pending, *see Plaintiff's Motion for Mistrial*, at 66, three points must be made: First, it was the Plaintiff himself – not the Defendant, not the GAL, not some third party beyond the Plaintiff's control – that made the choice to file the recusal motion. If that choice prevented the trial court from considering a motion for mistrial, that was a dilemma of the Plaintiff's own making. Second, even if one were to accept Plaintiff's argument that a court ought not act on a substantive motion while a recusal motion is pending, it would only apply to the time *after* the recusal motion was filed, not before it was filed. Third, to argue that it would not be appropriate for a court to act on a matter while a recusal motion is pending presumes there is something actually before the court for it to <u>not</u> act upon. That was not the case – the *Plaintiff's Motion for Mistrial* was only filed *after* Chief Judge Wheat recused herself and *after* this Court was designated to preside.

9

its unequivocal impropriety," *Id.*, at 2, and the issuance of a recusal order without an admission of "culpability." *Id.*, at 23, fn. 92.

In making these arguments, Plaintiff attributes little significance to the fact that Chief Judge Wheat – directly and explicitly – has addressed both the Plaintiff's allegations of misconduct and the Plaintiff's rationale for recusal. In other words, *these are matters already decided*. Parties, of course, have the right to disagree with a trial court's decisions. What parties do not have the right to do is act as if the trial court never made a decision in the first place.

On April 19, 2024, Chief Judge Wheat made a decision: "Plaintiff's Motion to Recuse on the grounds of bias and delay is denied." However, Chief Judge Wheat did recuse herself – but not on the grounds of misconduct or for any of the other reasons cited by the Plaintiff. This is what Chief Judge Wheat wrote in her order:

> Plaintiff's appeal was dismissed in August 2023. Between that time and now Plaintiff has docketed numerous hearings relating to his Motion to Recuse. He has issued numerous third-party subpoenas to the Court's former law clerks and Clerk's office staff, which have been heard and quashed by other judges, including ones specially assigned to the case by the Office of the Executive Secretary.[16]
>
> Plaintiff has been afforded every opportunity to litigate this case as he deemed appropriate. He has been given every opportunity to be heard. The Court has ruled on every issue put before it in a fair and impartial manner, always giving precedence to the best interests of the child.
>
> However, given how this case has proceeded over the past year, it is clear that further involvement by the Honorable Judith L. Wheat is an inefficient use of judicial resources and serves no purpose but to distract from the paramount issue- the best interest of the child.

[Recusal] Order (April 19, 2024), at 4-5. Chief Judge Wheat categorically denied the Plaintiff's accusations and allegations of judicial misconduct, as follows:

**On Plaintiff's claims of improper and unremediated ex parte communications with GAL:**

- "Plaintiff cites a January 2021 email between the Court's law clerk and the GAL, sent during the height of the COVID-19 pandemic, requesting on behalf of the Court whether options existed for supervised, visitation between Plaintiff and the minor child. At that

---

[16] This Court was designated to hear and resolve the motion to quash the subpoenas issued to Chief Judge Wheat's law clerks.

10

> time, visitation had been halted by the Court after the Court found in June 2020 that Plaintiff admitted to physical violence against the child and admitted making verbal threats of harm to the minor child. Plaintiff's actions occurred after he learned the minor child had told a therapist he preferred to live with Defendant."

- "The evidence tendered on April 11, 2024, established that the GAL immediately disclosed the substance of the January 2021 email and its genesis from the Court to all counsel. In addition, the substance of the communication was addressed on the record at the end of a motions hearing on March 4, 2021 by the Court, with both parties and counsel present. The Court believed then and now this disclosure satisfied its obligation under Virginia Judicial Canon I(J). The Court stated in that hearing its position that given the acrimonious nature of the relationship between the parents, which had further deteriorated after June 2020, the minor child's unwillingness to have any contact with Plaintiff, and Plaintiffs admitted conduct in 2020, the Court supported supervised visitation as a means for getting Plaintiff back in contact with the minor child *pendente lite*. The Court strongly encouraged both parties to consider options proposed by the GAL."

[Recusal] Order (April 19, 2024), at 1-2.

**On Plaintiff's claim of bias:**

- "At no time during that hearing, or any of the subsequent hearings prior to trial in June 2021, or the August 2021 continuation date, did Plaintiff raise any issue regarding the Court's communication with the GAL in January 2021 or the Court's on the record statement in March 2021 regarding supervised visitation. Plaintiff raised no concern about any bias by the Court, potential or actual, in attempting to reunite Plaintiff with the minor child through supervised visitation under the auspices of the GAL prior to the Court's September 2021 ruling on the merits of the case. Likewise, although the Court provided an oral ruling in September 2021, the parties waited until March 2022 to submit an order reflecting that ruling. Again, no issue was raised during any of that time regarding potential bias by the Court against Plaintiff. After that order was entered, the Court held additional hearings which focused entirely on whether Plaintiff was in contempt of court for his failure to pay attorneys' fees as directed in the March 2022 order. The Court ultimately ruled in Plaintiffs favor on that issue."

- "This Court's role, in custody modification cases, is to act in the best interests of the child. Notwithstanding Plaintiff's admitted conduct during both the 2019 trial, the 2020 emergency hearing, and the 2021 trial, this Court, along with the GAL, remained focused on ways to

11

> reunite Plaintiff with the minor child in a way that would protect the physical safety and emotional well-being of the child. The options available during the COVID-19 pandemic were extremely limited, especially as the GAL reported throughout the proceedings that the child was unwilling to have any contact at all with Plaintiff."

- "In the Court's March 2022 order, verbally tendered in September 2021, the Court provided Plaintiff with the option for supervised visitation with a reunification therapist and review by the Court of recommendations by that therapist regarding resumption of unsupervised visitation. When the Court ruled in 2021, the child had just turned thirteen (13). He is now almost sixteen (16). Since March 2022, the Court has received no communication from any reunification therapist regarding resumption of visitation between Plaintiff and the child. Moreover, counsel for Plaintiff affirmatively stated in the hearing on this motion that Plaintiff has not had contact with the child since June 2020."

[Recusal] Order (April 19, 2024), at 2, 4.

### On Plaintiff's Claim of Undue Delay:

- "[A]s to Plaintiff's allegations of undue delay, numerous days of Court time were allotted to this case during the period June 2020 through September 2021, when the Court was operating under COVID-19 Emergency Guidelines. Notwithstanding the serious allegations made by both parties, the voluminous discovery motions, including multiple third-party motions to quash discovery, the entire case was tried and decided in 16 months. This included multiple days of hearings on Defendant's initial emergency motion in 2020 and approximately a week of trial on the parties' cross-petitions to modify custody. All matters before the Court were adjudicated and ruled upon. After the Court ruled, the parties waited over 6 months to tender an order to the Court for entry. Between entry of the order in March 2022 and August 2023, the case was on appeal to the Court of Appeals."

- "As the Court stated on the record in March 2021, while the issue of how to resume visitation between Plaintiff and the minor child during the height of COVID in summer 2020 was being considered by the Court, Plaintiff filed a counter-petition to modify visitation. In that petition, Plaintiff alleged that Defendant had perpetrated a fraud on the Court, fabricated evidence of a bruise on the minor child's cheek and lied to the Court about the child's injuries. Afterwards, Plaintiff proceeded with a litigation strategy that included voluminous subpoenas, including ones directed at the child's school and its staff that resulted ultimately in the

12

child being asked not to return to the specialized private school he had been attending."

- "At numerous hearings, the rancor between the parties and their counsel had to be addressed by the Court. At all times, the minor child remained squarely in the middle of the parents' conflict. Throughout the pendency of this proceeding, the parties filed and docketed over fifty (50) motions.

[Recusal] Order (April 19, 2024), at 2-3.

Approximately two weeks after Chief Judge Wheat issued her recusal order, the Plaintiff filed a motion for reconsideration. *See Plaintiff's Motion for Reconsideration of Ruling on Motion for Recusal* (filed May 4, 2024). Plaintiff reiterated his allegations of judicial misconduct and the various bases upon which he sought Chief Judge Wheat's recusal. However, Plaintiff had to address the fact that Chief Judge Wheat had, in fact, recused herself. Therefore, much of this motion was devoted to attacking the recusal order itself. He claimed that it was error for Chief Judge Wheat not to recuse herself on the grounds advocated by the Plaintiff, and that her recusal order was just additional evidence of "Judge Wheat's bias." *Id.*, at 8. Plaintiff concludes: "The Court must reconsider its decision and must acknowledge its bias and delay and recuse on those grounds." *Id.*, at 13.

On May 22, 2024, the Supreme Court of Virginia appointed the Honorable Robert J. Smith to preside over the case. On May 24, 2024, Judge Smith denied the Plaintiff's motion for reconsideration, noting "that the current motion does not seek a reconsideration of the Court's ruling but rather of the Court's reasoning for said ruling."

To summarize: Plaintiff first sought recusal of Chief Judge Wheat in May 2023. It was denied. He then sought recusal of Chief Judge Wheat in October 2023, which was granted in April 2024, but not in the manner and for the reasons alleged by Plaintiff. Reconsideration was then sought by Plaintiff and reconsideration was denied by a new judge designated by the Supreme Court of Virginia. In short, this is a matter decided, decided again, and then decided again. A fourth consideration of the matter by this Court is not warranted, appropriate or justified.

For the foregoing reasons, *Plaintiff's Motion for Mistrial* is DENIED.

B. <u>Paragraph 10 of the Custody Order</u>

<u>All</u> parties agree that the review contemplated by ¶10 should not take place at the present time. As to whether ¶10 should be deleted from the Custody Order, the Court has already explained its rationale for doing so. There is simply no basis for believing that ¶10 has any remaining vitality, given the Plaintiff's failure to engage in reunification therapy.

Therefore, ¶10 of the March 4, 2022 Custody Order is DELETED.

13

C. <u>Further Custody and Visitation Litigation</u>

The Defendant's position is that "no further court hearings in connection with the Custody Order need to be scheduled at this time." *See Defendant's Position with Respect to Further Litigation.* The GAL's position is similar: "No further hearings are necessary in this case, and no further order on visitation is necessary." *See Guardian Ad Litem's Position on Further Litigation.* The Court agrees.

The Plaintiff does request further court proceedings – but for the purpose of granting his motion for mistrial, vacating every one of Chief Judge Wheat's orders "from inception," reopening discovery, conducting depositions, taking additional evidence, and rejecting Chief Judge Wheat's findings of fact and conclusions of law. Plaintiff also seeks to conduct additional litigation to "determine his motion for disqualification of the Guardian *ad litem.*" *See Plaintiff's Position Statement for Further Proceedings,* at 1.

In the meantime, while all the above is underway, Plaintiff requests that the Court grant him "expanded and substantial unsupervised, overnight and extended" visitation. That is, of course, contrary to the terms of the existing Custody Order. In effect, Plaintiff asks this Court to ignore the Custody Order while deciding whether to vacate the Custody Order. This, the Court will not do.

Finally – and only after the Court has granted the motion for mistrial, vacated Chief Judge Wheat's every order, investigated the Plaintiff's multifarious accusations and allegations of judicial misconduct and judicial errors of fact and law – the Plaintiff states that the Court should conduct a "re-trial" and award Plaintiff sole legal and primary physical custody.

It is clear to this Court that the Plaintiff sees no path forward that does not involve a repudiation, rejection and revocation of everything that has previously occurred in this case. The *Plaintiff's Motion for Mistrial* is the embodiment of this position. The Court has denied the *Plaintiff's Motion for Mistrial* and now denies the Plaintiff's proposed course of future litigation.

The Custody Order of March 4, 2022, except for ¶10, shall remain in effect.

## V. Concluding the GAL's Service

Aaron Book has served as GAL for several years in this protracted and highly contentious litigation. Given the decisions made by the Court in this Order, and given that it is a Final Order, the Court deems it appropriate to relieve the GAL at this time, his work concluded. The Court recognizes, however, that there remains a pending motion brought by Plaintiff to remove Mr. Book as GAL. Therefore, the Court wishes to make clear that it is relieving Mr. Book as GAL because his work as GAL is done, and not based on any finding of misconduct, as alleged by Plaintiff in his *Motion to Remove Guardian Ad Litem* (filed April 10, 2023). As to the Plaintiff's motion to remove the GAL, it is hereby DISMISSED, as moot.

THIS ORDER IS FINAL.

SO ORDERED, this 15 Day of October 2024.

Randy I. Bellows
Judge-Designate